IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  v.<br><br>FARHANA SHAHZADI<br>and<br>SHAWN ALI KHAN,<br><br>  *Defendants*. | Case No. 1:01-cr-132 |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS TO EXPUNGE RECORD OF DISMISSED CHARGES**

The United States, through undersigned counsel, respectfully submits this response in opposition to the defendants' motions to expunge the record of their criminal charges. For the reasons stated below, the United States urges this Court to deny the defendants' motions.

**I.   Factual Background**

On July 11, 2000, defendant Farhana Shahzadi was working as a teller at the Seven Corners branch of Chevy Chase Bank (now Capital One Bank), located in Fairfax County, Virginia. That day, while her co-worker was away on her lunch break, Shahzadi used her co-worker's teller terminal to transfer $100,000 from a victim customer's account to an account controlled by Shahzadi's husband, Shawn Ali Khan. Khan had opened the account using a fake Pakistani passport bearing a false name: Faizahad Mohalla.

After Shahzadi performed the unauthorized transfer out of the victim's account, she called Khan to inform him. Shortly thereafter, Khan visited the Tysons Corner branch of Chevy Chase Bank, located in Fairfax County, Virginia, and attempted to withdraw $100,000 in cash from the

1

Faizahad Mohalla account. Bank employees told Khan that they would need 48 hours' notice before being able to facilitate such a large cash withdrawal. Khan demanded that he be given the money immediately, but eventually left the branch after being denied again.

That afternoon, a bank security officer called the Seven Corners branch where Shahzadi worked and requested to speak to Shahzadi's co-worker, the same co-worker whose teller terminal was used by Shahzadi to facilitate the $100,000 transfer. The security officer told Shahzadi that he was attempting to locate the transfer slip for that transfer. Later that same day, a manager from another branch visited the Seven Corners branch, reviewed security footage, and interviewed all of the branch employees. When Khan called Shahzadi later that day to say that he had not been able to withdraw the money, Shahzadi explained that the bank was aware of the transfer and that she would probably get into trouble. The couple was never able to access the $100,000.

Over the next two days, bank employees continued to conduct an inquiry into the fraudulent transfer and attempted withdrawal of the $100,000. As part of that inquiry, they interviewed the assistant manager of the Tysons Corner branch about his interaction with the person who tried to make the cash withdrawal. They showed a picture of Khan to the assistant manager, and he confirmed that was the person who tried to make the cash withdrawal. They also interviewed Shahzadi, who wrote a statement for the bank investigators saying that a stranger had blackmailed her into performing the unauthorized transfer. Following their investigation, the bank terminated Shahzadi's employment.

In December 2000, agents from the Federal Bureau of Investigation (FBI) interviewed Shahzadi and Khan separately. Initially, they each disclaimed responsibility for the theft. However, after being confronted with the evidence that the FBI had collected, they each confessed to the scheme and provided many of the aforementioned details regarding their conduct. Shahzadi

admitted that the written statement she had given to bank investigators was false. Khan admitted that the scheme had been his idea, and that he had told Shahzadi to transfer the money from another teller terminal so that it could not be traced back to Shahzadi. They both admitted that they decided to steal the money because they had amassed a large amount of credit card debt and needed money to pay their bills. Shahzadi wrote a statement for the FBI, accepting responsibility for the fraud scheme as detailed above.

During Khan's interview with the FBI, he explained that he had moved to Canada when he was 16 years old and attempted to gain asylum there due to religious persecution in Pakistan. He and Shahzadi were married while he lived there. Prior to getting married, Shahzadi had been living with her parents in Virginia. After Canada denied his asylum claim, they entered the United States and Khan again attempted to gain asylum here. At the time of their crime, his asylum claim was still under review.

In January 2001, the U.S. Attorney's Office for the Eastern District of Virginia sent letters to Shahzadi's and Khan's apartment, informing them that they were targets of a Department of Justice investigation and recommending that they should obtain legal counsel and have that counsel contact law enforcement to discuss the matter. Two days later, Khan called the FBI agents and left a voicemail saying that he did not have the funds to hire a private attorney. The FBI agents made numerous attempts to contact Shahzadi and Khan at their apartment and at their places of employment, but they could not be found. The employers of both Shahzadi and Khan told the FBI agents that they had recently resigned from employment. According to their landlord, Shahzadi and Khan moved out of their apartment in February 2001 and left no forwarding information. According to Khan's credit card records, he purchased air travel to Toronto, Canada and to London, England in February 2001.

In March 2001, the U.S. Attorney's Office charged Shahzadi and Khan by complaint, and an arrest warrant was issued. In April 2001, they were indicted on charges of bank fraud and conspiracy, and a bench warrant was issued. Shahzadi and Khan did not appear at the scheduled arraignment hearing, and the U.S. Attorney's Office informed this Court that they were fugitives.

Also in April 2001, the FBI agents learned that Khan was the subject of an Alexandria Police Department investigation into credit card fraud, completely separate from the federal bank fraud case. The Alexandria Police Department suspected that Khan, who had been employed as an executive assistant, stole his supervisor's corporate credit card following the supervisor's sudden demise. Khan was suspected of incurring significant unauthorized expenses on this card. He was also suspected of using his late supervisor's personally identifiable information (PII) to obtain another credit card, and then incurring further expenses on that card.

In August 2001, Shahzadi and Khan were arrested by Canadian immigration authorities as they attempted to enter Canada using fake Canadian passports. Shahzadi then attempted to apply for refugee status in Canada, claiming that she was a refugee from Pakistan. It appears that this application was denied. In October 2002, Shahzadi visited the U.S. Embassy in Islamabad, Pakistan, and claimed that she needed them to issue her a replacement "green card" (i.e., verification of status as a lawful permanent resident of the U.S.) because she had lost hers. This request was also denied.

In February 2022, this Court granted the government's motion to dismiss (without prejudice) the indictment against Shahzadi and Khan. In July 2023, Shahzadi and Khan each wrote a letter to the Clerk's Office in the Albert V. Bryan U.S. Courthouse in Alexandria, Virginia. They each listed their address as being in Chantilly, Virginia, and they each included a phone number with a "571" area code, which serves the Northern Virginia area. The letters are nearly identical,

claiming that they had recently applied for jobs that require a background check, and that the record of their criminal charges appears on their "security clearance and background checks, causing unnecessary complications and hindering [our] personal and professional growth and ultimately causing unwarranted negative consequences for [us]." *See* ECF Nos. 10, 11. The letters requested that the record of their criminal charges be removed so that it "no longer appears on [our] security clearance and background checks." *See id.*

In November 2023, an attorney representing Shahzadi and Khan filed formal motions to expunge the record of their criminal charges. *See* ECF Nos. 14, 15. Again, the motions are nearly identical. They claim that, "[a]t the time of the indictment, Khan and Shahzadi were living abroad where they continue to reside." The motions go on to say that the reason for the requested expungement is that they have "resided abroad for more than 20 years but [have] immediate family members in the United States. [They] are subject to intensive screening at airports due to the indictment reflected on [their records], and this has left [them] fearful of traveling to the United States, especially with [their children]." *See id.* Because of this, the motions request that this Court "exercise its equitable power to expunge." *See id.*

## II. Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (internal citations omitted). There is no constitutional provision that provides for expungement of criminal records. *See United States v. Mettetal*, 714 F. App'x 230, 233 (4th Cir. 2017). Congress, for its part, has provided for

5

expungement of criminal records in "discrete and limited circumstances." *See id.* at 236 n.4.[1]  Of those, there are no statutes that could plausibly provide relief to the Defendant.

The defendants claim that this Court may exercise "ancillary jurisdiction" to give them the equitable relief they seek.  Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen*, 511 U.S. at 378.

Importantly, the two types of matters contemplated by *Kokkonen* to justify the use of ancillary jurisdiction are non-equitable in nature: (1) "to permit disposition by a single court of claims that are . . . factually interdependent," and (2) "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority and effectuate its decrees." *Kokkonen*, 511 U.S. at 379–80.

Indeed, the Fourth Circuit has expressly declared that federal courts may not rely on "ancillary jurisdiction to expunge criminal records for purely equitable reasons." *Mettetal*, 714 F. App'x at 234–35; *see also United States v. Happel*, 770 F. App'x 147, 148 (4th Cir. 2019) ("[F]ederal ancillary jurisdiction does not extend to petitions for equitable expungement.").  Courts in this district have reached the same conclusion. *See United States v. Colon*, No. 2:90-CR-147, 2017 WL 838660, at *2 (E.D. Va. 2017); *United States v. Taylor*, No. 3:12-MJ-230, 2014 WL 1713485, at *1 (E.D. Va. 2014); *United States v. Mitchell*, 683 F. Supp. 2d 427, 432–33 (E.D. Va. 2010).

---

[1] Statutes providing for expungement include: 10 U.S.C. § 1565(e) (requiring expungement of DNA records after a court overturns a military conviction); 18 U.S.C. § 3607(c) (permitting expungement of criminal records in enumerated drug possession cases); 21 U.S.C. § 844a(j) (allowing for expungement of civil penalty records in certain drug possession cases); and 42 U.S.C. § 14132(d) (permitting expungement of FBI DNA records in certain cases after a conviction is overturned).

Even in instances where a court does have ancillary jurisdiction, "[i]nvocation of courts' inherent power to expunge criminal records is to be reserved only for extreme and compelling circumstances, such as when necessary to 'remedy[] the denial of an individual's constitutional rights,' or when the government concedes the defendant's innocence." *United States v. Salleh*, 863 F. Supp. 283, 284 (E.D. Va. 1994) (internal citations omitted). Ancillary jurisdiction "must be sparingly exercised. . . . [Courts] should not rush to annex jurisdiction on purely ancillary grounds." *Mettetal*, 714 F. App'x at 234.

### III. <u>Argument</u>

Here, the defendants' motions must be denied because the court is not empowered to exercise ancillary jurisdiction to grant the relief they're requesting. By their own language, the motions are asking this Court to "exercise its <u>equitable</u> power to expunge," a proposition that has been explicitly rejected by the Fourth Circuit. *See Mettetal*, 714 F. App'x at 234–35 *("Kokkonen* bars federal courts from invoking ancillary jurisdiction to expunge criminal records for purely equitable reasons.").

Furthermore, there is no non-equitable justification to exercise ancillary jurisdiction to expunge the record of the defendants' criminal charges. The expungement of their records does not fit within either of the two categories contemplated by *Kokkonen* to justify the use of ancillary jurisdiction: expungement does not involve the consolidation of multiple matters so as to "permit disposition by a single court of claims that are . . . factually interdependent," nor does expungement have anything to do with helping "to enable a court to function successfully." *See Kokkonen*, 511 U.S. at 379–80.

Lastly, even if this Court were authorized to exercise ancillary jurisdiction to grants the defendants' requested relief, this case is far from the "extreme" or "compelling" situations in which

expungement would be appropriate. Rather than this being a situation in which the "government concedes the defendant's innocence," *Salleh*, 863 F. Supp. at 284, this is a situation in which the defendants' fled the United States because they knew they were about to be charged with federal crimes for which there was overwhelming evidence of their guilt. As explained above in Section I, Shahzadi and Khan have engaged in a criminal course of conduct that involved multiple instances of lying, defrauding, and stealing. Khan stole his deceased supervisor's credit card and then used the supervisor's identity to obtain another credit card. Khan and Shahzadi conspired to steal $100,000 from a bank customer, and used a different teller terminal so that it would cast suspicion on an innocent co-worker. Shahzadi lied to bank investigators, saying that she had only acted under threat of blackmail. They both lied to the FBI when asked about the theft, and only confessed after they were confronted with incontrovertible proof. After they received the letter from the government informing them that they were targets and recommending that they seek counsel, they quit their jobs and fled the country. Shahzadi lied to Canadian authorities, claiming that she was a refugee from Pakistan. She lied to U.S. Embassy authorities, claiming that she needed a new "green card" because she had simply misplaced hers.

Even now, in their motions for expungement, their claims are riddled with inconsistencies. Their letter motions claim that they have a Chantilly address, a Northern Virginia phone number, and that they seek expungement in order to get a security clearance. However, their amended motions claim that they continue to reside abroad and that they seek expungement in order to visit family in the United States.

The dismissal of the defendants' indictment was without done for administrative reasons, and not for any reason having to do with the government believing that the defendants are innocent. On the contrary, the government believes that there is overwhelming evidence that the defendants

8

are guilty, including a written and signed confession by Shahzadi. The government sought dismissal <u>without prejudice</u>, and is empowered to reinstitute these charges against the defendants at any time.

### IV.     Conclusion

For the foregoing reasons, the United States respectfully urges this Court to deny the defendants' motions to expunge the record of their criminal charges.

                                        Respectfully submitted,

                                        Jessica D. Aber
                                        United States Attorney

By:    *Jordan Harvey*
           Jordan Harvey
           Assistant United States Attorney
           United States Attorney's Office
           2100 Jamieson Avenue
           Alexandria, VA 22314
           Tel.: (703) 236-3852

## **CERTIFICATE OF SERVICE**

    I hereby certify that, on February 14, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*Jordan Harvey*
Jordan Harvey
Assistant United States Attorney